**2,953.15 ACRES OF LAND, MORE OR LESS, Situate IN RUSSELL COUNTY, STATE OF ALABAMA, and Richard H. Bickerstaff, et al., Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 21052.

United States Court of Appeals Fifth Circuit.

June 30, 1965.

Rehearing Denied Sept. 7, 1965.

Albert W. Stubbs, Columbus, Ga., Samford & Torbert, Opelika, Ala., Hatcher, Stubbs, Land & Rothschild, Columbus, Ga., for Richard H. Bickerstaff and others, appellants.

A. Donald Mileur, Atty., Dept. of Justice, Ramsey Clark, Asst. Atty Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Ben Hardeman, U. S. Atty., Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before RIVES, WISDOM and BELL, Circuit Judges.

RIVES, Circuit Judge.

The United States filed its complaint, accompanied by a declaration of taking, to condemn flowage easements on eleven tracts of land in Russell County, Alabama. The interest in the property to be acquired was described both in the complaint and in the declaration of taking as an easement permanently to overflow, flood, and submerge the land below elevation 192 feet mean sea level and occasionally to overflow, flood, and submerge the land between elevation 192 and 221 mean sea level. The district court ordered and adjudged "that all defendants to this action and all persons in possession or control of the property described in the complaint filed herein shall surrender possession of the said property, to the extent of the estate being condemned, to plaintiff immediately."

The landowners, by their answers to interrogatories, set up claims for damages to the land between elevation 192 and 221 mean sea level, that is to the part subject to the occasional flooding easement,[1] asserting that when the level of the Chattahoochee River is raised by the construction of the dam to flood permanently a part of the land, the necessary result will be to raise the level of the ground water table under the surface of that part of the land subject to the occasional flooding easement, thus damaging valuable underground deposits of clay, sand and gravel, as well as pecan trees.[2]

On the basis of the answers to its interrogatories, the United States filed a motion for partial summary judgment. In ruling upon that motion the district court held:

"Here, the landowners will be entitled only to just compensation for the injury and damage to the land upon which the flooding easements have been imposed; while it will be proper that the damage to the pecan

---

1. The district court's order shows that it understood the landowners also to claim damages to adjoining tracts "on which no easements are being imposed" and "which are not flooded at all." (R. 101) We accept appellants' disclaimer of any such intention: "We do *not* contend that there will be any damages to minerals or pecan trees because of the increase in the level of the underground water table under that part of the tracts above Elevation 221 m.s.l., i. e., that part of the tracts not subjected to any easements.

"Thus, we eliminate any question of severance damages. We are not talking about damages to the remainders of the tracts not subjected to any easement."

2. The district court's order shows that it understood the landowners' claim to be "for the prospective destruction of or injury to the clay and pecan trees due to underflowing and impedance to drainage." But appellants' brief assures us that the claim is solely for underflowing: "Nowhere in the record is there any claim by condemnees for damages resulting from 'impedance of drainage.' This phrase has its sole basis in the Order of the District Court (R., p. 101) where it was erroneously referred to as a claim of the landowners."

trees and clay, if any—as a result of the imposition of the flooding easements—be considered by the jury in determining the difference between the fair market value of the land before and after the imposition of the flooding easements, it will not be proper for this Court to enlarge the Government's declaration of taking to include prospective destruction of the clay and pecan trees—as separate items—due to possible underflowing and impedance to drainage upon the 'occasional flooding tracts' and adjoining tracts.

\*     \*     \*     \*     \*     \*

"In this case, these landowners will be entitled to receive just compensation by an award of what is taken by the flooding easements, but not for any consequential damages as a result of the raising of the water level. United States v. Willow River Power Co., 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101; Lynn v. United States, 5 Cir., 110 F.2d 586. The rule that will be applied in this case in determining just compensation for the flooding easements will be the difference in the fair market value of the land (including severance damages, if any) before the imposition of the flooding easements and afterwards. Slattery Company v. United States, 231 F.2d 37 (5th Cir., 1956). The landowners will not be allowed to prove or offer evidence in support of their theory that the loss of their clay, other minerals, and pecan trees, are compensable as separate items. Neither will the landowners be allowed to prove or offer evidence in support of their theory that there was a loss of their clay, other minerals, and pecan trees to lands lying above Elevation 192 feet above Mean Sea Level as a result of the raising of the pool by the construction of the dam.

"In consideration of the foregoing, this Court is of the opinion that the United States is entitled to have its several motions for partial summary judgment granted. The granting of the several motions for partial summary judgment in the above-listed tracts will exclude any claim by the landowners for damages, if any there be, to pecan trees, vegetation, brick clay, or other minerals located on land lying above Elevation 192 feet above Mean Sea Level (the 'occasional flooding easement tracts' and the 'adjoining tracts') where such claims are based upon the raising of the water level pool in the Chattahoochee River and not strictly from the imposition of the flooding easements."

Upon motion of the several landowners, this order was amended to include a certificate under 28 U.S.C. § 1292(b) that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. This Court granted the landowners' motion for leave to appeal from the interlocutory order granting a partial summary judgment.

The appellants argue that the prospective damages from the underflooding will be a taking of their property under the fifth amendment for which they are entitled to just compensation. They rely primarily on United States v. Kansas City Life Insurance Co., 1950, 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277, a case from the Court of Claims, which discussed the other pertinent decisions including United States v. Lynah, 1903, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; United States v. Cress, 1917, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; United States v. Chicago, M. St. P. & P. R. Co., 1941, 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064; United States v. Willow River

Power Co., 1945, 324 U.S. 499,[3] 65 S.Ct. 761.

The district court did not reach the question of whether the claimed damage from underflooding would be compensable as a taking under the fifth amendment, because it held, in effect, that the complaint and the declaration of taking did not impose such an easement but were confined to easements "permanently to overflow, flood, and submerge the land lying below elevation 192 feet" and "occasionally to overflow, flood and submerge the land lying above the elevation 192 feet," and that the court lacked jurisdiction to enlarge the taking to include prospective damages due to alleged lateral underflooding.

■■ The exercise of the power of eminent domain is vested in the legislative branch of the Government. The power may be exercised directly or may be delegated to be exercised in any manner the Congress sees fit as long as constitutional restraints are not violated. The necessity and expediency of exercising the power, the amount of property and the estates to be taken are all matters to be decided by the grantee of the power and are not subject to judicial review with the possible exception of fraud, bad faith, or abuse of discretion,

not here present. These are well settled principles of the law of eminent domain.[4]

■■ The Acts of Congress delegating the authority for the present taking are carefully set forth in the complaint.[5] None of these Acts confer any power of supervision on the courts more than that contained in 28 U.S.C. § 1358, that "[t]he district courts shall have original jurisdiction of all proceedings to condemn real estate for the use of the United States or its departments or agencies." As said in Berman v. Parker, 1954, 348 U.S. 26, 35, 36, 75 S.Ct. 98, 104, 99 L.Ed. 27:

"It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch. See Shoemaker v. United States, 147 U.S. 282, 298 [13 S.Ct. 361, 37 L.Ed. 170]; United States ex rel. Tennessee Valley Authority v. Welch, supra, 327 U.S. [546] at page 554 [66 S.Ct. 715, 90 L.Ed. 843]; United States v. Car-

---

3. It may be noted that there are some factual distinctions between those cases and the present case. Those cases did not involve prospective damages; the damages had already materialized. The Kansas City Ins. Co. case, the one most nearly in point, concerned land bordering a non-navigable tributary 1½ miles above its confluence with the navigable stream, a fact several times emphasized by the majority opinion (339 U.S. at pp. 801, 806, 810–11, 70 S.Ct. 885). Justices Douglas, Black, Reed and Minton, dissenting, thought that one who is riparian to a tributary has no greater right than one who owns the shore of the river (339 U.S. 813, 70 S.Ct. 885). We express no opinion on the materiality or legal significance of those or other factual differences between those cases and this one.

4. See the many federal and state cases cited in 29A C.J.S. Eminent Domain §§ 87–92,

pp. 350–379; 18 Am.Jur., Eminent Domain §§ 105–111.

5. "2. The authority for the taking is the Act of Congress approved February 26, 1931 (46 Stat. 1421, 40 U.S.C. 258a), and acts supplementary thereto and amendatory thereof, and under the further authority of the Act of Congress approved April 24, 1888 (25 Stat. 94, 33 U.S.C. 591), which act authorizes the acquisition of land for river and harbor purposes; the Act of Congress approved July 24, 1946 (Public Law 525, 79th Congress), which act authorizes the construction of the Fort Gaines Lock ·and Dam, which said lock and dam, by Public Law 85–363, approved March 28, 1958, has been redesignated the Walter F. George Lock and Dam; and the Act of Congress approved October 24, 1962 (Public Law 87–880), which act appropriated funds for such purposes."

mack, 329 U.S. 230, 247 [67 S.Ct. 252, 91 L.Ed. 209]."[6]

This Circuit has repeatedly recognized that the courts have no jurisdiction to review the legislative or administrative discretion as to the extent of the right, interest or estate in property to be taken.[7]

■■ The appellants, however, insist that "we do not attempt to force the Government to take something which it has not sought in the declaration of taking. We attempt to make it pay for what it *is taking*." The Government concedes, as it must, that the landowners are entitled to assume in the condemnation suit that the Government will make the full use physically possible of any easement described in the complaint.[8] The easement which the Government claimed vested in it upon the filing of the declaration of taking.[9] It then acquired the right to flood permanently a part of the land and to raise and maintain the level of water in the Chattahoochee River to 192 feet above mean sea level. The law seems to be settled that "[t]he owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." United States v. Miller, 1943, 317 U.S. 369, 373, 63 S.Ct. 276, 280, 87 L.Ed. 336. Damages reasonably to be anticipated from the use of the property for the purpose for which the condemnation is made are relevant in determining the compensation to be awarded for the taking.[10]

The Seventh Circuit in United States v. Chicago, B. & Q. R. Co., 1937, 90 F.2d 161, 168, answering the Government's contention that it was being compelled to accept and pay for more rights than it asked, said:

> "The objection is not tenable as to the first action, because by its filing the Government impliedly agreed to pay for all damages to the remaining property, proximately caused by the use of that which it had physically appropriated. Hence it will be presumed to have demanded the right to cause the damage for which it was liable."

See also United States v. Smith, 5 Cir. 1962, 307 F.2d 49.

■ The Government urges that the claimed damages are not capable of ascertainment at the time of the taking, but are remote and speculative.[11] Of course, compensation for the taking of property for public use must be determined as of the time of taking.[12] We doubt very much whether the landowners would be permitted to split their claims, introduce evidence of prospective damages which can be reasonably foreseen so as to recover in this proceeding such compensation as will put the owners in as good position pecuniarily as they would have occupied if their property had not been taken, and

6. The three cases cited fully support the same principle.

7. For example, see Dade County, Fla. v. United States, 5 Cir. 1944, 142 F.2d 230, 231; United States v. 6.74 Acres of Land in Dade County, Fla., 5 Cir. 1945, 148 F.2d 618, 619–20; United States v. 9 Acres of Land More or Less, in St. Mary Parish, E.D.La.1951, 100 F.Supp. 378, 379, aff'd Oyster Shell Products Corp. v. United States, 5 Cir. 1952, 197 F.2d 1022, 1023. United States v. Brondum, 5 Cir. 1959, 272 F.2d 642, 646.

8. Government's Brief, p. 12.

9. 40 U.S.C. § 258a.

10. United States v. Dickinson, 1947, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789;

United States v. Chicago, B. & Q. R. Co., 8 Cir. 1936, 82 F.2d 131, 135; United States v. Chicago, B. & Q. R. Co., 7 Cir. 1937, 90 F.2d 161, 167–68; compare Campbell v. United States, 1924, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328; Orgel, Valuation under Eminent Domain §§ 55, 56.

11. See 29A C.J.S. Eminent Domain §§ 153b, 154.

12. United States v. Klamath and Moadoc Tribes, 1938, 304 U.S. 119, 123, 58 S.Ct. 1219, 82 L.Ed. 1219; Kieselbach v. Commissioner of Internal Revenue, 1943, 317 U.S. 399, 403, 63 S.Ct. 303, 87 L.Ed. 358; United States v. Miller, 1943, 317 U.S. 369, 374, 63 S.Ct. 276.

recover later before the Court of Claims,[13] or in a suit under the Tucker Act,[14] the actual damages which may materialize from the underflow long after the declaration of taking.

The Government suggests that it is highly preferable from the standpoint of both the landowners and the Government to wait until damages materialize to justify a suit under the Tucker Act or before the Court of Claims. If that were agreed, the rights of the landowners to sue for damages accruing in the future might be safeguarded by an appropriate provision in the judgment.[15] At this stage of the proceedings, however, we cannot deny the right of the landowners, if they so elect, to undertake to increase the compensation to be awarded by proof of damages which can be reasonably anticipated from the maximum use of the easement sought.

The partial summary judgment should not have been entered unless it appeared to a certainty both that there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law.[16] In the present state of this record, neither the facts nor the law are at all clear. On this incomplete record, we should not undertake to decide the important questions of constitutional law which may be presented.[17] "Again, only an adjudication on the merits can provide the concrete factual setting that sharpens the deliberative process especially demanded for constitutional decision." United States v. International Union United Automobile, etc., Workers of America (UAW-CIO) 1957, 352 U.S. 567, 591, 77 S.Ct. 529, 541, 1 L.Ed.2d 563. See also United States v. Petrillo, 1947, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877; Connor v. New York Times, 5 Cir. 1962, 310 F.2d 133, 135. And, of course, we cannot say whether the proof of facts as to prospective damages can

be made with such certainty as to justify a present award of compensation based in part on any decrease in value by the prospect of such damages. All that we hold is that the district court erred in entering the partial summary judgment. That judgment is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

---

13. 28 U.S.C. § 1491.

14. 28 U.S.C. § 1346(a) (2).

15. See United States v. Holmes, 4 Cir. 1956, 238 F.2d 229, 231.

16. Rule 56(c), Fed.R.Civ.P.; Palmer v. Chamberlin, 5 Cir. 1951, 191 F.2d 532, 540, 27 A.L.R.2d 416.

17. See n. 3, supra.