**UNITED STATES of America, Plaintiff, Appellee,**

**v.**

**6,321 ACRES OF LAND MORE OR LESS Situated IN SUFFOLK COUNTY et al., Defendants, Appellees,**

**City of Boston, Defendant, Appellant.**

**No. 73–1033.**

United States Court of Appeals, First Circuit.

Heard April 10, 1973.

Decided May 30, 1973.

Mack K. Greenberg, Asst. Corp. Counsel, Boston, Mass., with whom Herbert P. Gleason, Corp. Counsel, Boston, Mass., was on brief for appellant.

Jacques B. Gelin, Atty., Dept. of Justice, with whom Kent Frizzell, Asst. Atty. Gen., James N. Gabriel, U. S. Atty., Edmund B. Clark, and Peter H. Ruvolo, Attys., Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This appeal arises from a suit by the United States to condemn certain property located in the City of Boston for use as an addition to an existing postal facility. In April 1966 the Post Office Department notified the City of Boston that it planned to expand the South Boston Postal Annex through the medium of a lease-construction arrangement. Under this plan the proposed addition was to be built and owned by private parties and then leased to the Department, thus remaining subject to local taxation. In September of that year the Department filed an application for a building permit for this project which was denied when a number of potential zoning violations became apparent. This denial was appealed, however, and in March 1967, upon further assurances to the city that the proposed structure would remain on the

tax rolls, the necessary variances to the zoning law were granted. Thereafter, the parcel in question was conveyed by the government to private developers, construction proceeded for four years, and, on December 7, 1971, the addition was leased to the Postal Service for a term of thirty years with certain options for renewal for substantial periods of time.

Some two weeks later, however, in an abrupt change of policy, the Postal Service filed a "Declaration of Taking" with reference to this property and, on December 30, 1971, filed the instant condemnation suit in which the City of Boston and all other parties thought to have an interest in this property were joined as defendants. After the value of the interests of all the other claimants had been agreed upon, the United States moved to dismiss the city as a party. Upon hearing, the district court granted this moton finding that the city had not demonstrated ownership of any compensable interest in the property and, to the extent that the city sought to recover for breach of an alleged agreement with the Postal Service, that it lacked jurisdiction to entertain this claim in this proceeding.[1] This appeal followed.

■■ The initial issue which must be examined on appeal is the nature of appellant's interest in the condemned property. In this regard the city first argues that the Postal Service's promise, allegedly made in exchange for the approval of the building permit, that this facility would remain on the tax rolls for at least thirty years afforded it "a special and unique interest in the property" which is compensable within the meaning of the fifth amendment. In the alternative, the city contends that an agreement between itself and the Postal Service arose out of the circumstances detailed above and that it is entitled to compensation because this agreement was appropriated in this proceeding. We

---

1. The district court held that jurisdiction to hear such a claim would lie only in the Court of Claims under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 (1970).

find neither of these contentions persuasive.

Turning first to appellant's contract-appropriation argument, while recognizing that compensation may be required where a contract is taken, Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934 (1924); Omnia Commercial Co., Inc. v. United States, 261 U.S. 502, 508, 43 S.Ct. 437, 67 L.Ed. 773 (1923), we do not agree that this rule advances appellant's claim since, in the instant case, if any agreement was taken, it was one between the Postal Service and the lessor of the condemned property. Under these circumstances, even assuming that a contract did exist between appellant and the government, the most that can be said is that its performance was frustrated by this taking, a contingency deemed non-compensable by the Court in *Omnia, supra.* See Mullen Benevolent Corp. v. United States, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192 (1933). The argument based upon appellant's alleged "special" interest in the property fares no better since, in our view, regardless of how this interest is described, it amounts to nothing more than an expectation of collecting future taxes on the parcel in question. That such an expectation is not a compensable interest in a condemned parcel is well settled since to permit a state or municipality to recover on such a claim would violate the long recognized immunity of the federal government from the taxing power of the states. *See* M'Culloch v. State of Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819); Adaman Mutual Water Company v. United States, 278 F.2d 842, 849 (9th Cir. 1960) and cases cited; United States v. City of Glen Cove, 322 F.Supp. 149, 155 (E.D. N.Y.), aff'd 450 F.2d 884 (2d Cir. 1971). As this court observed in People of Puerto Rico v. United States, 134 F.2d 267 (1st Cir.), cert. denied, 320 U.S. 753, 64 S.Ct. 59, 88 L.Ed. 448 (1943), a condemnation action in which an irrigation service sought additional compensation for the diminution of its tax base,

"Appellant . . . [argues] that it has a legal right and duty to levy and collect special taxes and assessments on the land within the irrigation district for the purpose of repaying the money borrowed on the irrigation bonds, and that this legal right is a franchise, . . . We find no merit in this contention. It is true that under the laws of Puerto Rico there existed the right to levy special assessments upon the lands for the payment of the bonds but it does not follow that the right to exact special assessments is a franchise. If this were so, it could equally be argued that the right to tax is a franchise for which upon condemnation the United States must pay just compensation. We know of no valid distinction for the purpose of the present discussion between the right to tax in general and the right to levy special assessments. [Citation omitted.] Any piece of property taken in condemnation by the United States is withdrawn from the scope of local taxation. But to say that the power to tax is a franchise or property right is to say that a state or municipality may in effect levy taxes upon property taken by the United States in condemnation proceedings. This obviously is not so." *Id.* at 270–271.

While the city had received a specific commitment of taxes for a fixed period, we do not see that this additional factor takes this case out of the general rule making non-compensable an expectation of taxes. The trial court was thus clearly correct in concluding that appellant failed to establish ownership of a compensable interest in the property taken.

■■ Appellant's further contention that it should be entitled to assert a counterclaim for breach of its alleged agreement with the Postal Service in this proceeding is also without merit. This argument flies directly in the face of the fundamental precept of sovereign immunity that the United States may not be sued unless it has consented and, where this has occurred, that such consent is to be strictly construed. United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). In light

of this rule, since the counterclaim in question is based upon an alleged breach of contract and sums in excess of $10,000 are in issue, it is clear, under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 (1970), that it may be heard only in the Court of Claims. *See* United States v. 83.70 Acres, Etc., State of Washington, 430 F.2d 1130, 1132 (9th Cir. 1970). The further suggestion that raising this counterclaim is permissible under rule 71A, Fed.R.Civ.P., the rule which governs procedure in federal condemnation actions, is also not convincing. While this rule has been construed to permit joint defendants to assert cross-claims against one another in these proceedings, *see* United States v. Merchants Matrix Cut Syndicate, Inc., 219 F.2d 90, 93–96 (7th Cir.), cert. denied, 349 U.S. 945, 75 S.Ct. 873, 99 L.Ed. 1271 (1955); United States v. Eight Tracts of Land, Brookhaven, N. Y., 270 F.Supp. 160 (E.D.N.Y.1967); *but see* United States v. 76.15 Acres of Land, 103 F.Supp. 478 (N.D.Cal.1952), its promulgation did not effect a waiver of the government's immunity and counterclaims by defendants against the United States, like the one in issue, have not been permitted. *See* United States v. 3,317.39 Acres, Etc., Jefferson County, Arkansas, 443 F.2d 104, 106 (8th Cir. 1971), cert. denied, 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675 (1972); United States v. 9 Acres, Etc., St. Mary Parish, Louisiana, 100 F.Supp. 378 (E.D.La.1951), aff'd sub nom., Oyster Shell Products Corp., Inc. v. United States, 197 F.2d 1022 (5th Cir.), cert. denied, 344 U.S. 885, 73 S.Ct. 184, 97 L.Ed. 685 (1952): We see no reason to depart from these decisions on the instant record.

Finally, appellant's challenge to the necessity of this taking merits little comment. The taking was for a legitimate public purpose; whether it is better for the government to own rather than lease is a matter of practical judgment beyond judicial scrutiny. *See* Berman v. Parker, 348 U.S. 26, 35–36, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

Affirmed.