**UNITED STATES of America,**
**Appellee,**

v.

**21.54 ACRES OF LAND, MORE OR LESS,**
**situate IN MARSHALL COUNTY,**
**STATE OF WEST VIRGINIA, et al.,**
**Appellants.**

**No. 72–2447.**

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1973.

Decided July 13, 1973.

Jolyon W. McCamic, Wheeling, W. Va. (McCamic, McCamic & Hazlett, Wheeling, W. Va., on brief), for appellants.

Stephen G. Jory, Asst. U. S. Atty. (James F. Companion, U. S. Atty., on brief), for appellee.

Before WINTER and FIELD, Circuit Judges, and BLAIR, District Judge.

BLAIR, District Judge:

Clarence and Bernice Darrah appeal from a jury verdict entered in a condemnation proceeding in the United States District Court for the Northern District of West Virginia, at Wheeling. Pursuant to the authority contained in 40 U.S.C. § 258a, 33 U.S.C. §§ 591, 595 and Pub.Law 90–147, the United States filed a declaration of taking on December 4, 1968, subsequently amended on January 20, 1970, describing the lands and interests to be acquired and paying into court the estimated amount of just compensation. By means of these declarations, the United States acquired flowage easements necessitated by the harbor and river improvement project known as the Hannibal Locks and Dam Project on the Ohio River.

The land condemned consisted of 20 tracts containing approximately 21.54 acres which bordered Fish Creek, a tributary of the Ohio River, located in Marshall County, West Virginia. Four of the aforementioned tracts belonged to the appellants, and the condemnation suit as to one tract was settled prior to trial. Each of the three remaining tracts, consisting of a total of 1.02 acres of land, was described, in the declaration of taking, by metes and bounds and as lying between 620 and 628 feet, mean sea level. In each instance, the description began at a fixed and determinable point on the contour line on the left bank of Fish Creek 628 feet above mean sea level and ran by metes and bounds to a point on the contour line 620 feet above mean sea level. Each description contained as two of its boundaries the aforesaid contour lines and described those boundaries as running with the meanders of such lines for fixed distances. Additionally, each description indicated that "the contour at elevation 620 . . . represents the existing ordinary high water stage in this reach of Fish Creek. . . ." The landowners, however, disagreed with the government's description of the ordinary high water mark and asserted that, in fact, it was represented by a contour line at elevation 610. Under their theory, the government would have to condemn all the land lying between elevation 628 and 610 feet above sea level in order to acquire land interests necessary to carry out the stated purpose of the condemnation.

The issue of the location of the ordinary high water mark was presented in a pre-trial order and, after a hearing, the court ruled "that the determination of the ordinary high water mark is a factual issue to be ultimately decided by a jury. . . ." The landowners objected immediately and shortly thereafter the government moved the court to reconsider its ruling. In response, the court apparently re-evaluated its position and notified the parties that because it was limited by the executive declaration of taking, the extent of the take was not an issue which could be presented to either the court or jury.

The landowners, then, in correspondence to the court, suggested that since there was no real issue respecting the valuation of the take as limited by the court's ruling, an interlocutory appeal would be the most judicious way of proceeding with the case. Nevertheless, the court felt that the issue of valuation should be submitted to the jury so that the appeal would be from a final judgment. On the day of trial, however, the landowners attempted to testify as to the value of the property that was being taken. The court refused to permit the presentation of this evidence because of the landowners' prior representations that valuation was not an issue. Therefore, after the government finished its presentation, the case was submitted to the jury which returned a verdict in fa-

vor of the landowners in the amount of $125. It is from this judgment that the landowners appeal.

## I.

The power of eminent domain, which is inherent in the sovereign, is limited by the language of the Fifth Amendment to the Constitution of the United States: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation." Congress has established two methods by which "just compensation" may be awarded.

Under the general condemnation statutes and the Federal Rules of Civil Procedure, the government may elect to condemn property. To do this a declaration of taking is filed detailing the authority for the condemnation, a description of the lands taken, and the public use for which the lands are required. Additionally, the estimated amount of just compensation must be deposited in the court. After this has been done, title vests in the United States. If the landowner does not believe that the estimated compensation accurately reflects the value of the land taken, he is, with two exceptions, entitled to have this issue determined by a jury. The first exception is in cases in which the court determines that valuation should be resolved by a commission of three persons, and the second is when Congress has expressly established a tribunal to determine the amount of compensation due. See 40 U.S.C. § 258a; Fed.R.Civ.P. 71A.

It is also possible for the government to proceed under what is generally known as "inverse condemnation." In this situation, no formal declaration of taking is filed. The landowner, however, is not without a remedy. At any time within the six-year period following the taking of his property, he may institute a suit under the Tucker Act against the United States in the Court of Claims or in the United States District Court if the amount claimed does not exceed $10,000. See 28 U.S.C. §§ 1346, 1491, 2501. In either case, the issue of just compensation is not resolved by a jury. 28 U.S.C. § 2402; Ct.Cl.R. 52–53.

When the government proceeds by formal condemnation, the general rule is that the extent of the take is a discretionary decision for the condemning authority which may not be modified by the judiciary. The reason for this is that as long as the government acts within the scope of its authority, it cannot be compelled to take other than that which it has determined is needed. And if, ultimately, it is determined that the government has taken more than it has formally condemned and paid for, the landowner may recover under the Tucker Act for the additional take. See Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); United States v. 3,317.39 Acres of Land, 443 F.2d 104 (8th Cir. 1971); Wilson v. United States, 350 F.2d 901 (10th Cir. 1965); United States v. Brondum, 272 F.2d 642 (5th Cir. 1959); United States v. 342.81 Acres of Land, 134 F.Supp. 430 (N.D. Ga.1955).

It was the application of this sound principle of law which led the trial court to conclude that, in the instant case, the location of the ordinary highwater mark was not an issue which the court could resolve. In the declaration of taking, the government has described the parcels of land sought by metes and bounds so that the extent of the take is ascertainable with mathematical precision. Therefore, the location of the ordinary high water mark was thought by the district judge to be irrelevant since the United States could not be required to acquire more land than it had elected to condemn. And, the district judge reasoned that if the landowners were correct in their contention that the United States erred in determining the location of the ordinary high water mark on Fish Creek, they would have a claim for inverse condemnation after the actual uncompensated take occurred. While acknowledging the soundness of this gen-

eral rule, we conclude that the district judge erred in applying it to the facts in this case.

In Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), the issue was whether the District of Columbia Land Agency had the authority to condemn certain property pursuant to a plan of urban renewal. The property owner's argument was that the agency had only the authority to condemn slum dwellings and that since his building was a department store, its acquisition was unauthorized. The court rejected this contention, stating that the planning commission had determined that the best way to effectuate urban renewal was to condemn the entire area. This decision would not be reviewed because "the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch." Id. at 35–36, 75 S.Ct. at 104.

Similarly, in United States v. 3,317.39 Acres of Land, 443 F.2d 104 (8th Cir. 1971), the court held that judicial review of the extent of a take was improper. In that case, the government acquired flowage easements in connection with a project on the Arkansas River. The landowners contended that the declaration of taking failed to include an additional amount of land that would be flooded upon completion of the project. Evidence of valuation addressed to the "increased" take was admitted by the trial court. The Court of Appeals reversed, holding that the damages must be limited to the land described by the government in its declaration of taking since the area of the take could not be increased or decreased by the courts.

Other cases involving the condemnation of flight easements surrounding airports further illustrate the reluctance of courts to review an executive determination in an eminent domain proceeding. For example, United States v. Brondum, 272 F.2d 642 (5th Cir. 1959), held that a district court could not compel the government to take an avigation easement when the declaration of taking specified that a clearance easement was being condemned. The reason was that the United States had the discretion to take either type of easement and that once it had elected to take a clearance easement a court is without jurisdiction to require the taking of something else. See also, United States v. 64.88 Acres of Land, 244 F.2d 534 (3d Cir. 1957); United States v. 4.43 Acres of Land, 137 F.Supp. 567 (N.D.Tex.1956).

It is apparent that each of the aforementioned cases stand for the general proposition that the discretionary determination by the condemning authority of the extent of the take is not reviewable by the court. We perceive the issue in the instant case to be different. It is clear from the declaration of taking that the United States has chosen to acquire flowage easements along Fish Creek because it has determined that the dam project will raise the ordinary high water mark to an elevation of 623 feet with occasional overflow to an elevation of 628 feet. Although the land in which the flowage easements is to be acquired is described with accuracy, it is equally clear from the declaration of taking that it is the intention of the United States to acquire such easements in all land lying between the highest elevation of the land to be acquired and the existing ordinary high water mark. Clearly, the government believes the ordinary high water mark is represented by the contour line at an elevation of 620 feet. The accuracy of this belief is directly challenged by the landowners who contend that the ordinary high water mark is represented by the contour line at an elevation of 610 feet. To the extent that the government is incorrect in its belief as to the location of the ordinary high water mark, it is also incorrect in its description of the land in which it has determined that easements will be necessary. To us, the issue then is not the extent of the take but rather whether the government has, in fact, accurately described the land in which it intends to take easements.

When, as is the case here, the United States elects to condemn a flowage easement to raise the level of a stream or creek, it must compensate the landowner for the land located above the ordinary high water mark in which such easements are taken. This line has been defined as that line below which no terrestrial plant life will grow because of the constant action of the water. *See* Borough of Ford City v. United States, 345 F.2d 645 (3d Cir. 1965). Obviously, it is impossible to raise the level of the water without overflowing those lands which are located between the former ordinary high water mark and the new ordinary high water mark. By the actual terms of the taking in this case, the lower boundary of the land in which flowage easements are to be taken must correspond to the existing ordinary high water mark. Therefore, any description of the area of take in which these two lines do not coincide is patently erroneous. To the extent that such an issue is raised, we conclude that it is one for determination by the court in the same proceeding in which the issue of just compensation is to be determined by a jury. Such a determination, which is permitted by Rule 71A(h) of the Federal Rules of Civil Procedure, *cf.* United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970), is analogous to a case in which the language of an instrument of conveyance is reformed to accurately reflect the true intent of the parties. *See, e. g.,* Hawkins v. Fradkin, 85 U.S.App.D.C. 310, 178 F.2d 705 (1949). Furthermore, resolution of this issue would in no way interfere with the discretionary exercise by the executive branch in determining the extent of the take. But, on the contrary, the judiciary would be accepting that determination by resolving a factual issue necessary to effectuate the expressed intention of the condemning authority.

Our finding that the trial judge erred in refusing to decide this issue is not altered by the fact that other avenues to seek relief are open to the landowners. That is, at such time as the flooding occurs, the landowners are entitled to proceed against the United States under the Tucker Act claiming that the ordinary high water mark coincided with the contour line at the 610 foot elevation so that an ·inverse condemnation of the land lying between that line and the one at 620 feet had occurred. If the flooding occurred while the formal condemnation proceeding was pending in the United States District Court and the landowners' claim for damages did not exceed $10,000 it could be maintained by a counterclaim in the condemnation proceedings under the law of this circuit. *See* Thompson v. United States, 250 F. 2d 43 (4th Cir. 1957). Otherwise, the landowners would be forced to present their claim in an entirely separate proceeding. This would be in the Court of Claims unless the amount of damages sought did not exceed $10,000. In that instance, a district court could entertain their suit. In any event, the landowners would not be entitled to a jury trial either on the issue of the location of the ordinary high water mark or, assuming its location to be as they contend, on the issue of the value of the property taken. Furthermore, the necessity of having two trials to resolve a single issue can hardly be said to further the interests of judicial economy in a time of overburdened court dockets.

In this case, since the United States elected to proceed by condemnation under Rule 71A, the landowners were entitled to have a jury decide the issue of just compensation. To the extent that the landowners would be required to submit their claim to the court under the Tucker Act, they will have lost their right to have the issue of just compensation determined by a jury. This prejudice which flows directly from the trial judge's refusal to determine the location of the ordinary high water mark requires us to vacate the judgment.

Accordingly, we hold that the trial judge had jurisdiction to find as a fact the actual location of the ordinary high water mark, that in so doing he would not have interfered with the discretionary

determination by the executive branch of the extent of the take and that his failure to make such a finding resulted in possible prejudice to the landowners. On remand, the district court should determine as a fact the actual location of the ordinary high water mark as it relates to the lands in suit and if the United States is correct in its contention that the ordinary high water mark corresponds to the contour line at elevation 620 feet, the jury verdict heretofore entered should be reinstated. If the court determines that the ordinary high water mark is at some elevation lower than 620, the issue of just compensation for the entire tract condemned should be retried to the jury.

Vacated and remanded with instructions.

Costs to be paid by the United States.