**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HAROLD DEWHURST; DAVID BRYAN,
on behalf of themselves and all
other persons similarly situated;
UNITED STEEL, PAPER AND
FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-
CIO/CLC,

　　　　　*Plaintiffs-Appellants,*

　　　　　　　v.

CENTURY ALUMINUM COMPANY;
CENTURY ALUMINUM OF WEST
VIRGINIA, INCORPORATED; CENTURY
ALUMINUM MASTER WELFARE
BENEFIT PLAN; DOES 1 THROUGH 20,

　　　　　*Defendants-Appellees.*

No. 10-1759

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(2:09-cv-01546-JTC)

Argued: May 13, 2011

Decided: August 22, 2011

Before WILKINSON, KING, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge King joined.

---

## COUNSEL

**ARGUED:** Joseph P. Stuligross, UNITED STEELWORKERS OF AMERICA, Pittsburgh, Pennsylvania, for Appellants. Shay Dvoretzky, JONES DAY, Washington, D.C., for Appellees. **ON BRIEF:** William T. Payne, John Stember, Pamina Ewing, STEMBER FEINSTEIN DOYLE PAYNE & CORDES, LLC, Pittsburgh, Pennsylvania, for Appellants. Sarah McClure, JONES DAY, Washington, D.C.; Stanley Weiner, JONES DAY, Cleveland, Ohio; Ricklin Brown, BOWLES RICE MCDAVID GRAFF & LOVE, Charleston, West Virginia, for Appellees.

---

## OPINION

AGEE, Circuit Judge:

Arguing they are likely to succeed on the merits of their case, retirees and class representatives Harold Dewhurst and David Bryan, together with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (collectively, "the Retirees"), appeal the denial of their motion for a preliminary injunction seeking continuation of certain healthcare benefits. Because the district court did not abuse its discretion in denying the preliminary injunction, we affirm the judgment of the district court.

### I.

In 2007, Century Aluminum of West Virginia, Inc.,[1] which

---

[1] Century Aluminum of West Virginia's parent, Century Aluminum Company, and the Century Aluminum Master Welfare Benefit Plan are

then operated a plant in Ravenswood, West Virginia, began experiencing financial difficulty, which it attributed, in part, to escalating healthcare costs. In February 2009, Century curtailed operations at the plant and, later that year, announced its plan to modify or terminate retiree healthcare benefits for retirees aged sixty-five or older who retired between February 6, 1985 and June 1, 2006. Shortly thereafter the Retirees filed suit in the United States District Court for the Southern District of Ohio, contending their benefits were vested and that Century's intended modification would violate both the Labor Management Relations Act, 29 U.S.C. § 185, and the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

Following the December 2009 transfer of the case to the United States District Court for the Southern District of West Virginia, that court denied the Retirees' motion for a preliminary injunction, finding in a comprehensive order and opinion that the Retirees failed to establish a likelihood of success on the merits. *Dewhurst v. Century Aluminum Co.*, 731 F. Supp. 2d 506 (S.D. W. Va. 2010).

The Retirees now appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## II.

### A.

We review the denial of a preliminary injunction for abuse of discretion. *WV Ass'n. of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). Factual findings are reviewed for clear error; legal conclusions, de novo. *Id.* (citing *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004)).

---

also named defendants. We collectively refer to defendants herein as "Century."

B.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008). In *Winter*, the Supreme Court directed that a party "seeking a preliminary injunction *must* establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374 (emphasis added).

We have noted that standard in several recent cases: "In order to receive a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Musgrave*, 553 F.3d at 298 (quoting *Winter*, 129 S. Ct. at 374). *See also Scott v. Bierman*, No. 10-1483, 2011 WL 1807330, at *3 (4th Cir. May 12, 2011); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345-47 (4th Cir. 2009) *vacated by* 130 S. Ct. 2371 (2010), *reinstated in part by* 607 F.3d 356 (4th Cir. 2010). *Winter* thus requires that a party seeking a preliminary injunction, like the Retirees, must "clear[ly] show[ ]" that it is likely to succeed on the merits. *Winter*, 129 S. Ct. at 376.[2]

---

[2]The Retirees argue that because the district court limited its analysis to the first factor of *Winter* — plaintiffs' likelihood of success on the merits — and made no findings of fact as to the second, third, or fourth *Winter* factors, we should review this appeal de novo. Even if we were to follow the course the Retirees request, we would be compelled to find that the Retirees do not satisfy the *Winter* standard for the reasons set forth below.

III.

We note before beginning our analysis that the district court made a meticulous summary of the relevant collective bargaining agreements ("CBAs") and we include a portion below regarding the last CBA which is illustrative of earlier agreements:

> Similar to those SPDs preceding it, the 2006 SPD sets forth its reach at the outset, making its terms applicable
>
>> to Ravenswood Reduction Plant retirees and surviving spouses who retired or commenced receiving a surviving spouse pension from Century Aluminum of West Virginia, Inc. The Century Aluminum of West Virginia, Inc. Hourly Employees' Pension Plan on or after June 1, 2006. . . .
>>
>> This Plan has been established pursuant to Article 15 of the Labor Agreement dated June 1, 2006, between the United Steelworkers and Century Aluminum of West Virginia, Inc. Except as otherwise provided herein, the group benefits are effective June 1, 2006. This booklet, which describes the benefits, constitutes a part of the Labor Agreement.
>
> At least two observations are worth mention in summary. First, all of the CBAs, and the SPDs incorporated therein, that have governed the Century/Union relationship following the sale from Kaiser specify that retiree healthcare benefits are effective only during the lifetime of the particular CBA in effect at the time. Second, the 1995 and 1999 SPDs, but not the 2006 SPD, each contain continuation language that

arguably obligates Century to pay healthcare bene-
fits, during the life of the CBA to which the SPD
relates, to those who have retired prior to the effec-
tive date of the SPD under consideration.

*Dewhurst*, 731 F. Supp. 2d at 512-13 (citation omitted).

### A.

In support of their argument that they are likely to succeed
on the merits, the Retirees contend *Keffer v. H.K. Porter Co.*,
872 F.2d 60, 62 (4th Cir. 1989) stands for the proposition that
we have adopted the Sixth Circuit's decision in *International
Union, United Automobile, Aerospace & Agricultural Imple-
ment Workers of America v. Yard-Man, Inc.*, 716 F.2d 1476
(6th Cir. 1983). They contend "*Keffer* adopted the *Yard-Man*
inference," Br. for Appellants at 29, that retiree benefits "con-
tinue so long as the prerequisite status is maintained." *Id.* at
27. The district court determined that "[t]he reference to *Yard-
Man* was unnecessary to the decision in *Keffer* and, as such,
it is properly regarded as dictum." *Dewhurst*, 731 F. Supp. 2d
at 517 (emphasis omitted).

In *Keffer*, we found that the benefits at issue extended
beyond the expiration of the CBA due to the specific language
of the agreement: "[T]he express language of the parties' col-
lective bargaining agreement indicates that the benefits were
to survive." *Keffer*, 872 F.2d at 62. After finding the language
of the controlling documents created benefits that survived the
expiration of the CBA, we then noted that extrinsic evidence
also supported that conclusion. Only after making these deter-
minations did we observe that our interpretation of the CBA
was "also consistent" with the context in which retiree health-
care benefits arise:

> Such a determination is *also* consistent with a more
> far-reaching understanding of the context in which
> retiree benefits arise. Because benefits for retirees

> are permissive rather than mandatory subjects of collective bargaining, *see Yard-Man*, 716 F.2d at 1482 (citing *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 181-82 (1971)), "it is unlikely that such benefits, which are typically understood as a form of delayed compensation or reward for past services, would be left to the contingencies of future negotiations." *Yard-Man*, 716 F.2d at 1482.

*Id.* at 64 (emphasis added). Thus, the reference to *Yard-Man* was not necessary to our holding that the specific language of the CBA showed the parties intended for benefits to continue beyond the expiration of the agreement. Nor was it relevant to our alternative finding that extrinsic evidence supported our conclusion. For purposes of meeting the preliminary injunction standard to make a "clear showing" of likelihood of success on the merits, the Retirees' reference to the cited language in *Keffer* is of no benefit. *Keffer* simply was not decided on the basis that the Retirees claim. Moreover, even the Sixth Circuit does not accept the view of *Yard-Man* offered by the Retirees. *See Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 580 (6th Cir. 2006) ("[T]here is no legal presumption that benefits vest . . . . All that *Yard-Man* and subsequent cases instruct is that the Court should apply ordinary principles of contract interpretation.") (quotation omitted).

Applying ordinary principles of contract interpretation, we note that the collective bargaining agreement in *Keffer* differed materially from that before us here. In *Keffer*, retiree health benefits were explicitly linked not to termination of the agreement, but to a post-termination event, namely the date of the retiree's eligibility for Medicare. As the district court noted, "there is no comparable language . . . in any of the CBAs or the SPDs in this action. The agreements in *Keffer* are simply different from those at issue here." *Dewhurst*, 731 F. Supp. 2d at 519.

B.

The principal barrier to the Retirees' argument, as recognized by the district court, is that it runs head-on into our clear precedent from *Keffer* and *District 29, United Mine Workers of America v. Royal Coal Co.*, 768 F.2d 588 (4th Cir. 1985) that "[o]f course, as with any contract interpretation, we begin by looking at the language of the agreement for any clear manifestation of the parties' intent." *Keffer*, 872 F.2d at 62 (citing *Royal Coal*, 768 F.2d at 590).

In the case at bar, the CBA language on the duration of the benefits at issue appears direct and plain "that such benefits shall remain in effect for the term of this [year] Labor Agreement." J.A. at 182. As the district court noted, "all of the CBAs and SPDs from 1988 through the present contain language of this type." *Dewhurst*, 731 F. Supp. 2d at 520. This contract limit on the duration of benefits is similar to that in *Royal Coal*.

In *Royal Coal*, the applicable CBA language stated that benefits "shall be guaranteed during the term of this Agreement." 768 F.2d at 590 (emphasis omitted). Based on this language showing "the intent of the parties," *id.*, we determined the benefits did "not extend beyond the expiration of" the CBA:

> Employer obligations and employee rights, under a collective bargaining agreement, do not survive the expiration of the agreement absent a clear intention of the parties.

*Id.* at 592 (quotation omitted).

In the face of the durational language in the CBAs, our clear precedent in *Keffer* and *Royal Coal* does not support a finding that the Retirees have made a showing, much less a

clear showing, of a likelihood of success on the merits so as to meet the *Winter* standard.

## C.

The Retirees also contend they are likely to succeed on the merits because, in their view, the language of the relevant CBAs infers an intent for retiree healthcare benefits to extend beyond expiration of the relevant CBA, despite the durational language which limits benefits to the length of the agreement. For instance, the Retirees argue (among other things) the fact that Century did not specifically reserve the right to eliminate or alter benefits suggests that the bargainers did not intend to delegate to Century such a right. As noted by the district court, however, "[i]t might just as easily be explained . . . that Century deemed a reservation of rights as to healthcare benefits unnecessary inasmuch as it deemed the subject to arise anew during each bargaining cycle." *Dewhurst*, 731 F. Supp. 2d at 518 n.19. As with each of the Retirees' contentions, even if the absence of a reservation of rights provision were to inject ambiguity into the relevant CBAs, that ambiguity alone could not satisfy the Retirees' burden under *Winter* to make a "clear showing," 129 S. Ct. at 376, that they are "likely to succeed on the merits." *Id.* at 374.

Similarly, the district court did not agree with the Retirees' contention that healthcare benefits should be deemed vested because their pension benefits are specifically written to be vested and the healthcare benefit plan requires eligibility to receive a pension as a precondition for eligibility for healthcare benefits. The district court aptly noted "that language in the parties' pension agreements explicitly suggesting vesting as to pension benefits in actuality undercuts an inference of vesting as to healthcare benefits" because the healthcare provision contains no such language. 731 F. Supp. 2d at 517-18 "[T]he language referenced indicates that the parties understood how to vest an employee or retiree benefit when they

chose to do so. The failure to do so explicitly with retiree healthcare benefits. . . is telling." *Id.* at 518.

In sum, we have reviewed the record and agree with the district court that "for each contention offered by [the Retirees], an equally or more compelling response is, in the main, presented by Century." *Id.* at 520. Given the durational limitation similar to that in *Royal Coal* which is present in the relevant agreements, the Retirees fail to show that they are likely to succeed on the merits. Consequently, the Retirees, who "must establish" that they meet the *Winter* standard in order to be awarded a preliminary injunction, fail to do so. The district court did not abuse its discretion in so holding.

## IV.

The district court issued a thorough and well-reasoned opinion explaining in detail that the Retirees failed to establish a likelihood of success on the merits. We agree and therefore affirm the district court's denial of the motion for a preliminary injunction.

*AFFIRMED*