GREGORY, Chief Judge:
This appeal arises from a condemnation proceeding commenced by Appellee Mountain Valley Pipeline, LLC ("MVP"). MVP is a natural gas company that was authorized by the Federal Energy Regulatory Commission ("FERC") to exercise the right of eminent domain in order to construct a pipeline. The United States District Court for the Southern District of West Virginia granted MVP partial summary judgment on its right to condemn certain temporary and permanent easements on the properties of several landowners, including Appellant Western Pocahontas Properties, Limited Partnership ("WPPLP"). The district court also granted MVP's motion for a preliminary injunction allowing MVP immediate access to the easements described in MVP's complaint. WPPLP appeals the district court's decision granting MVP's motions for summary judgment and a preliminary injunction. WPPLP also challenges the district court's exclusion of evidence proffered during the preliminary injunction hearing.
For the reasons that follow, we affirm the district court's order in its entirety.
I.
The Natural Gas Act ("the NGA") authorizes the holder of a certificate of public convenience and necessity to condemn land necessary for a particular project if it cannot acquire the land through contract or cannot agree with the landowner as to the compensation.
*361 15 U.S.C. § 717f(h). Our holding in East Tennessee Natural Gas Co. v. Sage allows district courts to utilize their equitable power to grant injunctions to gas companies in NGA condemnation proceedings where the company has demonstrated that it has a substantive right to the property pursuant to the NGA and has met the requirements for a preliminary injunction. 361 F.3d 808, 828 (4th Cir. 2004).
On October 13, 2017, FERC issued a certificate of public convenience and necessity to MVP. The FERC certificate authorizes MVP to construct and operate a 303.5-mile natural gas pipeline from Wetzel County, West Virginia to Pittsylvania County, Virginia. After failing to acquire certain properties necessary for the pipeline through negotiation, MVP filed condemnation actions pursuant to the NGA against landowners in three district courts: in the United States District Courts for the Western District of Virginia and the Southern District of West Virginia on October 24, 2017, and in the United States District Court for the Northern District of West Virginia on December 8, 2017. This appeal concerns the action before the Southern District of West Virginia.[1]
In that action, MVP condemned easements on three parcels of land belonging to WPPLP. MVP condemned only the surface of those properties, asserting that the pipeline project did not require condemnation of the mineral rights or coal estate. MVP moved for partial summary judgment on its right to condemn temporary and permanent easements on the properties of several landowners (including those properties belonging to WPPLP) and sought a preliminary injunction allowing immediate access to the properties. MVP requested access to the landowners' property by February 1, 2018, a date MVP claimed would allow it to adhere to its construction schedule, complete tree-clearing in accordance with environmental requirements, and place the pipeline into service in late 2018. On January 19, 2018, WPPLP filed a motion to dismiss the condemnation action for failure to join an indispensable party. The district court granted MVP's motion to strike WPPLP's motion to dismiss from the record, arguing that no pleadings outside of the answer are permitted in an eminent domain proceeding.
On February 7, 2018, the district court held an evidentiary hearing regarding MVP's motion for partial summary judgment and preliminary injunction. At a prehearing conference, WPPLP proffered testimony to be heard at the preliminary injunction hearing. The majority of the proffered evidence would not relate to the surface tracts named in MVP's complaint but would instead address potential damage to coal and to the interests of WPPLP's affiliate, Western Pocahontas Properties, LLC ("WPPLLC") - a party that had not been joined in the condemnation action. The district court excluded the proffered evidence. After confirming with WPPLP that the proffered evidence did not relate to property that MVP sought to condemn in the complaint, the district court found the evidence to be irrelevant. In reaching its conclusion, the district court reasoned that it would not "hear evidence on properties that are not being taken." J.A. 161.
Following the evidentiary hearing, the district court granted MVP's motion for partial summary judgment and preliminary injunction. This appeal followed. WPPLP argues that the district court *362 committed reversible error by: (1) excluding WPPLP's proffered evidence; (2) failing to join WPPLP's affiliate, WPPLLC, as a party to the condemnation action; and (3) granting MVP's motion for summary judgment and preliminary injunction. We address each of WPPLP's challenges below and affirm the district court's order in its entirety.
II.
WPPLP contends that the district court abused its discretion when it precluded WPPLP from introducing evidence regarding potential damage to WPPLP and WPPLLC's coal as a result of the pipeline. MVP responds that the district court did not abuse its discretion, because MVP had the sole power to define the extent of the taking and evidence related to property that MVP did not seek to condemn would therefore be irrelevant. We agree with MVP's position and find that the district court did not abuse its discretion in excluding the evidence.
A district court's evidentiary ruling is reviewed for abuse of discretion. United States v. Medford , 661 F.3d 746, 751 (4th Cir. 2011) (citing United States v. Murray , 65 F.3d 1161, 1170 (4th Cir. 1995) ). Under this standard of review, the appellate court affords the evidentiary ruling "substantial deference," and will not overturn the ruling unless the decision was "arbitrary and irrational." Id. (quoting United States v. Weaver , 282 F.3d 302, 313 (4th Cir. 2002) ). A court abuses its discretion "when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." United States v. Henry , 673 F.3d 285, 291 (4th Cir. 2012) (internal citations omitted).
As WPPLP acknowledges, the general rule laid out by this Court in United States v. 21.54 Acres of Land, More or Less, in Marshall County (" Marshall County "), is that "the extent of the take is a discretionary decision for the condemning authority which may not be modified by the judiciary." 491 F.2d 301, 304 (4th Cir. 1973).[2] We recognized, however, that the judiciary could take up a landowner's challenge where "the issue ... is not the extent of the take but rather whether [the condemning authority] has, in fact, accurately described the land in which it intends to take easements." Id. at 305. In Marshall County , the government chose to condemn "flowage easements" along a creek because it determined that a dam project would raise the ordinary high water mark. Id. The government declared its intention to acquire easements in land lying between "the highest elevation of the land to be acquired and the existing ordinary high water mark." Id. The government and landowners disagreed about the location of the existing ordinary high water mark. Id. Given this factual dispute as to the location of the water mark, we held that the district court could address the issue in order "to effectuate the expressed intention of the condemning authority." Id. at 306. The landowners in Marshall County did not challenge the scope of the take or seek to force the government to take more than it described in the complaint. Rather, they sought to require the district court to determine what property the government had described in the complaint. In other words, the dispute was not whether the government had to take more than *363 it originally intended but how to give effect to the government's expressed intention.
Here, MVP's expressed intention is to condemn easements on the surface of WPPLP's property. Unlike the landowners in Marshall County , WPPLP does not debate what the term "surface" means or claim that the surface begins at a different point than MVP asserts. Nor does WPPLP assert that MVP's conception of the "surface" it intends to take is mistaken or that it inaccurately describes the easements listed in the complaint. Rather, WPPLP argues that the pipeline will likely result in damage to coal that belongs to WPPLP and WPPLLC and that MVP must condemn the coal in addition to the properties designated in the complaint.[3] In other words, WPPLP argues that MVP should be required to take more than MVP described in its complaint. However, allowing evidence as to property not described in the complaint in an effort to compel the condemnor to condemn additional property does not comport with our holding in Marshall County. Indeed, consideration of such evidence would serve to frustrate the intention of MVP rather than effectuating its expressed intention.
An Eighth Circuit decision we cited favorably in Marshall County further illustrates the flawed nature of WPPLP's argument. In United States v. 3,317.39 Acres of Land , More or Less , in Jefferson County , 443 F.2d 104, 105-06 (8th Cir. 1971) (" 3,317.39 Acres of Land "), the government acquired flowage easements in connection with a project on a river, and the landowners contended that the taking failed to include an additional amount of land that would also be flooded upon completion of the project. Given the landowners' contention, the district court admitted evidence of valuation addressing the "increased" take. Id. at 106. The Eighth Circuit reversed, finding that damages must be limited to the land described in the government's declaration of taking. Id.
Like the landowners in 3,317.39 Acres of Land , WPPLP asserts that MVP is going to take more property than it is representing in its complaint and that MVP therefore must condemn that additional property now. However, a gas company authorized by FERC to exercise eminent domain has "the discretion to determine the size" of the easements it needs to take, and the district court is not entitled to modify that decision. Columbia Gas , 701 F. App'x at 227 ; see also Marshall Cnty. , 491 F.2d at 304. Therefore, while WPPLP "may recover compensation for these damages in a separate action," it may not "assert such collateral claims within a condemnation proceeding." Columbia Gas , 701 F. App'x at 227-28 (internal citations omitted). Contrary to WPPLP's assertion, there is a remedy available to WPPLP (and WPPLLC) should MVP take more than it described in its complaint: an inverse condemnation action. See *364 United States v. Clarke , 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980) (describing an inverse condemnation action as a cause of action against a condemnor "to recover the value of property which has been taken in fact by the [condemnor], even though no formal exercise of the power of eminent domain has been attempted" by the condemnor). As WPPLP freely admitted at oral argument, all of its potential losses are compensable. Thus, any losses it may potentially suffer could be recovered in an inverse condemnation action if necessary. However, evidence of potential damage to property outside MVP's complaint is irrelevant in the condemnation proceeding.
The district court correctly applied our precedent regarding the extent of a taking in determining which evidence to consider at the preliminary injunction hearing. Therefore, the district court did not abuse its discretion when it excluded WPPLP's proffered evidence.
III.
WPPLP next argues that the district court erred by failing to join WPPLLC as an indispensable party. MVP argues that WPPLP waived its indispensable party argument when it failed to preserve that argument in its answer or to properly develop it in its opening brief. Because we agree that WPPLP waived its indispensable party argument, we find no error on this basis.
Pursuant to Federal Rule of Civil Procedure 71.1, a defendant in a condemnation proceeding must state all its objections and defenses to the taking in its answer and waives any objections and defenses not so included. Fed. R. Civ. P. 71.1(e)(3). Moreover, no other pleading or motion asserting an additional objection or defense is allowed. Id. Here, WPPLP raised its arguments regarding indispensable parties in a motion to dismiss MVP's complaint, which the district court struck from the record. Under the plain language of Rule 71.1 and our precedent, a defendant in a condemnation action is not permitted to file any pleading or motion aside from the initial answer. See Washington Met. Area Transit Auth. v. Precision Small Engines , 227 F.3d 224, 228 n.2 (4th Cir. 2000) ("Simply put, no other pleading beside the answer is contemplated." (internal citation omitted)); see also Atl. Seaboard Corp. v. Van Sterkenburg , 318 F.2d 455, 458 (4th Cir. 1963) (holding that a defendant's motion for a more definite statement and motion to dismiss in a condemnation proceeding were unallowable and recognizing that "[o]ne pleading to raise all objections and defenses to the taking and one hearing to dispose of them are contemplated, not successive pleadings and successive hearings"). Because WPPLP did not raise the indispensable parties argument in its answer to MVP's complaint, it waived its objection on this basis. Therefore, the district court did not err in declining to join WPPLLC in the condemnation action.
IV.
According to WPPLP, even if the district court did not err in excluding WPPLP's evidence or failing to join WPPLLC as an indispensable party, it nevertheless erred in granting MVP's motion for partial summary judgment and injunction in this case. Because we find no reversible error, we affirm the district court's grant of summary judgment and injunction in favor of MVP.
A.
We review an award of summary judgment de novo . Adams v. Trs. of the Univ. of N.C.-Wilmington , 640 F.3d 550, 556 (4th Cir. 2011) (internal citation *365 omitted). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the matter on appeal, we construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Adams , 640 F.3d at 556 ; FDIC v. Cashion , 720 F.3d 169, 173 (4th Cir. 2013). However, we do not weigh evidence or make credibility determinations. Foster v. Univ. of Maryland-Eastern Shore , 787 F.3d 243, 248 (4th Cir. 2015) (internal citation omitted).
WPPLP argues that the district court erred in granting MVP's motion for partial summary judgment on its right to condemn. A plaintiff must meet three requirements to exercise eminent domain under the NGA: (1) it must hold a valid FERC certificate; (2) the property it seeks must be necessary to the project; and (3) it must have been unable to acquire the property by agreement. 15 U.S.C. § 717f(h) ; see also Equitrans, L.P. v. Moore , 725 F. App'x 221, 224 (4th Cir. 2018) (per curiam) (holding that where property was necessary for the pipeline, FERC had issued the gas company a certificate, and the gas company was unable to acquire the land by agreement, "the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid ... as just compensation"). WPPLP does not dispute that MVP holds a valid FERC certificate and that the property it seeks to condemn is necessary to the pipeline. Rather, WPPLP argues that the motion for summary judgment should have been denied, because: (1) MVP made no offer to WPPLP or WPPLLC that included any valuation for coal; and (2) MVP failed to negotiate in good faith when it withheld its third-party engineering firm's evaluation of the effect of the pipeline on WPPLP's coal.
We do not find either of WPPLP's arguments persuasive. First, because MVP did not seek to condemn WPPLLC's property in the eminent domain action, MVP was not required to attempt to negotiate or reach an agreement with WPPLLC.[4] See Marshall Cnty. , 491 F.2d at 304. Nor was MVP required to make an offer to WPPLP for any of its property that was not described in the complaint. Second, as to WPPLP's argument regarding good faith, we note that this Court has never directly addressed the issue of whether the NGA requires gas companies to seek property by agreement in good faith before exercising eminent domain. We need not resolve that issue here, however, because WPPLP has failed to point to any authority that required MVP to disclose the results of its engineering analysis during negotiations for the surface easements in order to act in good faith. Indeed, WPPLP has not pointed to any evidence in the record that it requested and was denied the analysis. Because MVP was unable to reach an agreement with WPPLP as to the easements described in the complaint, the district court did not err when it granted summary judgment to MVP on its right to condemn. See 15 U.S.C. § 717f (h).
WPPLP has not pointed to a genuine dispute of material fact as to MVP's claim to invoke its eminent domain powers. Accordingly, we hold that the district court did not err in granting MVP's motion for summary judgment.
*366 B.
Finally, WPPLP argues that the district court abused its discretion in granting MVP's request for a preliminary injunction. For the reasons that follow, we find that the district court did not abuse its discretion in granting MVP's motion for a preliminary injunction.
A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and may never be awarded "as of right." Winter v. Nat. Res. Def. Council, Inc. , 555 U.S. 7, 22, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (internal citations omitted); see also Dewhurst v. Century Aluminum Co. , 649 F.3d 287, 290 (4th Cir. 2011) (" Winter thus requires that a party seeking a preliminary injunction ... must clear[ly] show[ ] that it is likely to succeed on the merits." (alterations in original) (internal citation and quotation marks omitted)). In order to receive a preliminary injunction, a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. Winter , 555 U.S. at 20, 129 S.Ct. 365. Each of these four requirements must be satisfied. Id. A preliminary injunction is reviewed for abuse of discretion. Dewhurst , 649 F.3d at 290 (internal citation omitted). We review factual findings for clear error and legal conclusions de novo . Id.
As to the first Winter requirement, the probability of success on the merits, the district court properly found that it was satisfied. Because MVP had already proved that it had a right to condemn the property at issue, success on the merits was not only probable but guaranteed. As to the second Winter requirement, the district court properly determined that MVP had proven that it was likely to suffer irreparable harm absent an injunction. We note that under our precedent, economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation. See, e.g. , Sage , 361 F.3d at 830. MVP set forth evidence that it would suffer significant unrecoverable financial damages and that it would face delays and miss an internal construction deadline in the absence of an injunction. Accordingly, the district court did not abuse its discretion in finding that MVP had satisfied the second Winter requirement.
As to the third Winter requirement, the balance of the equities, the district court did not abuse its discretion in determining that the significant irreparable harms faced by MVP in the absence of an injunction outweighed the potential harm of an injunction to WPPLP. We note that the district court did not expressly address the potential that immediate rather than postponed possession could be harmful to certain landowners. The district court relied heavily on our opinion in Sage in concluding that the balance of equities tipped in MVP's favor. J.A. 1140 ("In Sage , the Fourth Circuit conclusively spoke on this issue in the context of NGA condemnation actions."). While Sage is indeed controlling and suggests that the balance of equities may often tip in favor of the pipeline company in the context of NGA condemnations, we take this opportunity to clarify that such an outcome is by no means guaranteed. District courts in NGA condemnation actions must consider the particular harms to landowners in weighing the balance of the equities and may never grant a preliminary injunction "as of right." See Winter , 555 U.S. at 24, 129 S.Ct. 365.
*367 After thoroughly reviewing the particular evidence in this case, we agree with the district court that there was no evidence presented of harm to WPPLP resulting from the injunction, as opposed to the pipeline itself, that would outweigh the irreparable harm that MVP would likely suffer absent an injunction. Indeed, there is no indication that WPPLP will suffer any non-compensable harms from the issuance of an injunction. On this record, the district court did not abuse its discretion in finding that the balance of equities tipped in MVP's favor.
Finally, as to the fourth Winter element, the district court reasonably determined that the preliminary injunction was in the public interest, because it would allow for expeditious construction of a FERC-approved pipeline. As we explained in Sage , the issuance of a FERC certificate signifies that the Commission - the agency charged with administering the NGA - has determined that pipeline construction will advance the congressional purposes behind that Act and "serve the public interest," making available to consumers an adequate supply of natural gas at reasonable prices. 361 F.3d at 830. It follows, we reasoned, that granting a gas company immediate access to necessary easements during the pendency of condemnation proceedings likewise would advance the public interest, because a "delay in construction would postpone these benefits." Id.
The district court did not abuse its discretion in applying Sage to the facts of this case. As the district court recognized, MVP's certificate rests on an agency finding that the proposed pipeline will benefit the public by meeting a market need for natural gas, and will do so in a way that is environmentally acceptable. J.A. 1141 ("FERC conducted a careful analysis of the [project] and determined that the project will promote [the NGA's] goals and serve the public interest." (quoting Sage , 361 F.3d at 830 )). A delay in construction would therefore result in a delay of the benefits of the pipeline.
That is not to say, of course, that a FERC certificate necessarily will be dispositive of the public interest inquiry under Winter . Apart from setting an in-service deadline, a FERC certificate does not address timing, and so cannot establish by itself that immediate possession, as opposed to pipeline construction generally, is in the public interest. But echoing our reasoning in Sage , the district court here concluded that because delaying construction would delay the public benefits identified by the Commission, the public interest factor favored preliminary relief. And while there may be cases in which there are public-interest arguments against immediate possession that were not considered by the Commission in reviewing the public benefit of the pipeline project writ large, this is not one of them.
We note that the district court did not expressly recognize the distinction between the public interest in pipeline construction generally and in immediate access specifically. See Winter , 555 U.S. at 20, 129 S.Ct. 365 ("A plaintiff seeking a preliminary injunction must establish ... that an injunction is in the public interest." (emphasis added)). The district court did, however, incorporate our reasoning under the public-interest prong in Sage , which does address that issue and finished with the common-sense observation that a construction delay would postpone the benefits relied on by FERC in issuing its certificate. See J.A. 1141 (citing Sage , 361 F.3d at 830 ). Under these circumstances, the absence of additional analysis of the public-interest prong does not amount to an abuse of discretion. We therefore affirm the district court's grant of an injunction to MVP.
*368 V.
In sum, the district court did not abuse its discretion in excluding WPPLP's proffered evidence as to property that MVP did not identify in the complaint as part of its taking. The district court also properly declined to join WPPLLC as an indispensable party to the action. Finally, the district court properly granted summary judgment in favor of MVP and did not abuse its discretion in granting MVP's motion for a preliminary injunction. We therefore affirm the district court's order in its entirety.
AFFIRMED

Other landowners in the three condemnation actions challenge the district courts' issuance of preliminary injunctions before this Court in a consolidated appeal. See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land , No. 18-1159(L).

In Marshall County , the Court applied this rule to the government, but the rule also applies to a gas company to which eminent domain power has been delegated. See Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Baltimore and Harford Counties, Maryland , 701 F. App'x 221, 226 (4th Cir. 2017).

To the extent evidence of damage to coal within the area condemned by MVP could support the posting of a higher bond, we note that the district court expressly considered an affidavit submitted by WPPLP in which WPPLP's general partner, Gregory Wooten, asserted that the value of its property was far above MVP's estimate due to damage to "near-surface coal" that would be caused by the pipeline. See J.A. 1145. After considering the affidavit and other evidence, the district court required MVP to deposit an amount four times the preliminary estimate of its appraiser before taking possession of the condemned property described in the complaint. Similarly, to the extent that the taking impacts the value of improvements on the surface or the value of WPPLP's minerals below the surface, this would also factor in to the ultimate compensation determination in this action.

For the same reason, even if the FERC certificate required MVP to negotiate with landowners of condemned property, as WPPLP argues, such a requirement would not compel MVP to negotiate for land it was not condemning or with a party that did not own condemned property.