**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-1276**

---

ERIN OSMON,

> Plaintiff – Appellant,

> v.

UNITED STATES OF AMERICA,

> Defendant – Appellee.

---

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:21-cv-00353-MR-WCM)

---

Argued:  January 28, 2026                          Decided:  February 23, 2026

---

Before KING, AGEE, and HEYTENS, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Jonathan W. Corbett, CORBETT RIGHTS, P.C., Los Angeles, California, for Appellant.  Gill Paul Beck, Sr., OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:** Russ Ferguson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal from the Western District of North Carolina follows a bench trial on plaintiff Erin Osmon's civil battery claim, pursued against the United States of America under the Federal Tort Claims Act (the "FTCA").[1] Osmon's battery claim arises from a July 2019 pat-down inspection that was conducted by an officer of the Transportation Security Administration (the "TSA") at the Asheville Regional Airport. In its post-bench trial verdict of March 2025, the district court weighed and assessed the evidence, including witness testimony and video footage of the pat-down inspection, determined that the pat-down of Osmon was objectively reasonable, and ruled in favor of the United States. *See Osmon v. United States*, No. 1:21-cv-00353 (W.D.N.C. Mar. 12, 2025), ECF No. 56 (the "Bench Verdict"). On appeal, Osmon assails the Bench Verdict on various grounds. As explained herein, we reject Osmon's appellate contentions and affirm the judgment.

I.

A.

On July 27, 2019, Osmon arrived at the Asheville Regional Airport as a ticketed and confirmed passenger with a final destination of Los Angeles. As Osmon proceeded

---

[1] We recognize that, although the federal government is generally immune from lawsuits, the FTCA has waived the "sovereign immunity of the United States for certain torts committed by federal employees." *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Relevant here, the FTCA, as codified in Title 28, authorizes suits for "battery" arising out of "acts or omissions of investigative or law enforcement officers of the United States Government." *See* 28 U.S.C. § 2680(h). All such claims "shall be tried by the court without a jury." *Id.* § 2402 (citation modified).

through the passenger security screening checkpoint, a scanner alerted the TSA officers to a possible prohibited item in the area of Osmon's groin. To that end, the TSA's screening procedures mandated that a pat-down inspection be conducted in the event of such an alert. As a result, a female TSA Officer named Robinson approached Osmon and informed her that a pat-down of Osmon's groin area was required. Robinson also offered to conduct the screening in private, but Osmon declined the offer. Thus, the pat-down inspection took place in the general passenger screening area.

Video footage of the pat-down inspection was captured from two different angles on the Airport's closed-circuit television system (the "Airport video footage"). Relevant to this appeal, Officer Robinson conducted an "anterior" — i.e., frontal — sweep of Osmon's groin area by placing one palm on Osmon's outer hip and the other on Osmon's inner thigh. Robinson then moved her hands up Osmon's thigh to the point where Osmon's leg and torso met — which the TSA designates as the "point of resistance" — causing Osmon to flinch. *See* J.A. 239.[2] The pat-down was completed with no prohibited items being discovered. Osmon — who was visibly upset and crying after the pat-down — contends in these proceedings that Robinson's pat-down inspection was a sexual assault.

---

[2] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

B.

1.

In December 2021, Osmon filed her operative complaint against the United States, pursuant to the FTCA, alleging a single claim of civil battery under North Carolina law.[3] In September 2022, the district court adopted a magistrate judge's recommendation that Osmon's complaint be dismissed for lack of subject matter jurisdiction. Osmon appealed to this Court, and a unanimous panel reversed. *See Osmon v. United States*, 66 F.4th 144 (4th Cir. 2023). That is, our Court ruled that "the FTCA permits people who allege they were assaulted by TSA screeners to sue the federal government." *Id.* at 147. Osmon's complaint was thus reinstated for further proceedings in the district court. The parties then engaged in discovery, during which Osmon and Officer Robinson were deposed.

2.

The bench trial on Osmon's battery claim was conducted in Asheville on November 12, 2024. During the trial, Osmon's lawyer called two witnesses — Osmon and Officer Robinson. Relevant portions of the Airport video footage were played before the district court during the testimony of both Osmon and Robinson, and each witness was questioned about the events captured.

For her part, Osmon testified that the pat-down inspection was a sexual assault under the guise of a security screening, asserting that Robinson had used her fingertips to touch

---

[3] The FTCA incorporates the law of the place where the act occurred — in these proceedings, that is North Carolina. *See* 28 U.S.C. § 1346(b)(1).

4

Osmon's genital area through and beneath her clothing, and also that Robinson had improperly touched Osmon's bare skin. Osmon further said that Robinson had made inappropriate comments about Osmon's clothing, and that Robinson asserted that the pat-down would be repeated if Osmon resisted.[4]

Osmon also testified that she had no previous opinions about the TSA, and that she had never made social media posts concerning the TSA before the July 2019 incident in Asheville. On cross-examination, however, Osmon was confronted with a 2013 social media post she had made, which contained critical remarks about the TSA. Specifically, the post read: "My favorite part of Thanksgiving travel? Being publicly felt up by TSA due to cough medicine and my vaguely foreign sounding last name." *See* Bench Verdict 10. Although Osmon conceded that the picture and username on the social media post were her own, she related she could not remember making the post.

Officer Robinson was then called to testify. Robinson explained that the TSA's mandated pat-down inspection is very methodical, and that the pat-down she performed on Osmon was entirely consistent with the TSA protocol. Robinson also denied making any threatening or inappropriate comments to Osmon.

In its defense, the government called three witnesses, each employed by the TSA: Training Specialist Sanchez, who gave expert testimony about TSA pat-down inspection procedures; Officer Diller, Robinson's supervisor; and Officer Atchison, who was present

---

[4] During the pat-down events, Osmon was wearing shorts with about a 3-to-4-inch inseam. *See* Bench Verdict 7. Osmon testified at the bench trial that her shorts were not skin-tight, but "belled out at the bottom a little bit." *See* J.A. 125.

5

at the TSA checkpoint during the pat-down.[5] Following the testimony of the government's witnesses, Osmon was recalled in rebuttal. When the evidence had been completed, the district court adjourned the proceedings and requested "post-trial briefs in the form of closing arguments" from the parties. *See* J.A. 310. Those post-trial briefs were then submitted.

C.

On March 12, 2025, the district court filed its Bench Verdict, ruling in favor of the United States. That is, the Bench Verdict concluded that Osmon had not proven her battery claim by a preponderance of the evidence. In that regard, the Bench Verdict weighed and assessed the Airport video footage and the evidence of the trial witnesses. The Bench Verdict accorded little weight to Osmon's testimony, ruling that Osmon's "attempts to deny" her 2013 social media post "revealed her bias against TSA and substantially undermined her credibility." *See* Bench Verdict 10-11.

By contrast, the district court found Officer Robinson's testimony to be "credible" and "persuasive." *See* Bench Verdict 11, 12. In so ruling, the Bench Verdict described Robinson as a "woman of rather small stature and relatively meek in appearance and

---

[5] During the bench trial, Osmon objected to and moved to strike Atchison's testimony, arguing that it had not been adequately disclosed. Atchison had been identified in pre-trial disclosures as being present at the TSA checkpoint at the time, but her last name was misspelled in the disclosures and her contact information was not provided. The court denied a motion to strike Atchison's testimony, ruling that multiple disclosures had "obliquely but sufficiently" identified Atchison as a person with relevant knowledge, and observing that Osmon had failed to track Atchison down or take her deposition. *See* J.A. 304-05.

demeanor." *Id.* at 11. The Bench Verdict observed that Robinson "appeared on the video and in court as one taking her responsibilities as a LTSO very seriously." *Id.*[6] As a result, the Bench Verdict credited Robinson's testimony and found that Robinson had not threatened Osmon, that Robinson had not made any comments about Osmon's clothing, and that Robinson had not touched Osmon inappropriately or in a manner inconsistent with the TSA protocols. *Id.* at 15 (reciting that "[t]here is no credible evidence that LTSO Robinson intended to touch [Osmon's] genitals, that she did so in reality, or that she intended to sexually assault [Osmon] under the guise of routine screening").

Finally, the Bench Verdict conducted a "careful examination" of the Airport video footage and concluded that Osmon's account of the events — that is, that Officer Robinson had inappropriately touched Osmon's bare skin and genital area during the pat-down inspection — was "unsupported" by the trial evidence. *See* Bench Verdict 13-14. The Bench Verdict also determined that "any alleged incidental and brief touching of a passenger's thigh during a required groin pat-down would not constitute battery under North Carolina law." *Id.* at 13; *see also id.* at 13-14 (confirming that observation as also relevant to "incidental and brief touching of a passenger's pelvic area").

Based on the totality of the district court's evaluation, the Bench Verdict ruled that "[t]he evidence presented at trial . . . conclusively demonstrated that the pat-down of [Osmon] was objectively reasonable and proper" and entered judgment for the government.

---

[6] The acronym "LTSO" stands for a "Lead Transportation Security Officer" of the TSA. *See* Bench Verdict 1.

*See* Bench Verdict 20.  Osmon then timely noted her appeal from the Bench Verdict, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

An appeal from a judgment entered after a bench trial is "subject to a mixed standard of review, pursuant to which we review legal conclusions de novo and factual findings for clear error."  *See Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 654 (4th Cir. 2017).  Importantly, "we may not reverse the district court's findings simply because we would have decided the case differently."  *See Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 418 (4th Cir. 2005).  Rather, findings of fact can only be clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *See HSBC Bank USA v. F&M Bank N. Va.*, 246 F.3d 335, 338 (4th Cir. 2001) (citation modified).  Finally, we review evidentiary rulings for abuse of discretion, and we "will not overturn" such a "ruling unless the decision was arbitrary and irrational."  *See Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 362 (4th Cir. 2019) (citation modified).

III.

Osmon raises various issues on appeal, including (1) that the Bench Verdict misstated and misapplied North Carolina law; (2) that the Bench Verdict made biased and unsupported factual findings; and (3) that district court improperly admitted evidence during the trial.  As explained herein, we reject each of Osmon's contentions and are

8

satisfied they do not undermine the Bench Verdict's controlling conclusion — that is, that the TSA pat-down of Osmon was objectively reasonable and proper.

## A.

In the Old North State, the elements of civil battery are "intent, harmful or offensive contact, causation, and lack of privilege." *See Hawkins v. Hawkins*, 400 S.E.2d 472, 475 (N.C. Ct. App. 1992). As to the intent element, the required "intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." *See Andrews v. Peters*, 330 S.E.2d 638, 640 (N.C. Ct. App. 1985) (citation modified).

In resolving Osmon's battery claim, the Bench Verdict concluded, inter alia, as follows:

- "The evidence presented at trial — including LTSO Robinson's testimony, the video evidence, and the testimony from other TSA witnesses — conclusively demonstrated that the pat-down of the Plaintiff was objectively reasonable and proper";

- "LTSO Robinson did not have the subjective intent to touch the Plaintiff in a harmful or offensive manner"; and

- "Because LTSO Robinson did not intentionally touch the Plaintiff in an objectively offensive manner without her consent, the Plaintiff's battery claim fails."

*See* Bench Verdict 20 (citation modified). In other words, based on its assessment of the evidence, the Bench Verdict ruled that Osmon's battery claim failed for lack of an objectively harmful or offensive contact.

9

Osmon resists this straightforward application of law by arguing that the Bench Verdict "appeared to hold that North Carolina battery law requires intent to offend as an element." *See* Br. of Appellant 16. But Osmon overstates the import of the Bench Verdict's observations concerning Robinson's subjective intent because, as recited above, the Bench Verdict explicitly ruled that Osmon's "battery claim fails" because "Robinson did not intentionally touch [Osmon] in an objectively offensive manner[.]" *See* Bench Verdict 20. And that ruling forecloses any viable battery claim under North Carolina law, as well as Osmon's argument that reversible legal error occurred in that respect.[7]

B.

To the extent Osmon challenges the Bench Verdict's factual findings on the objective reasonableness of the pat-down inspection, there was no error in the district court's decision to credit Officer Robinson's testimony over that of Osmon. As the Supreme Court has made clear, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). In these circumstances, Robinson's credited testimony was buttressed by the Airport video footage, witness testimony, and the court's perception that Osmon was biased against the TSA. *See also U.S. Fire Ins. Co. v. Allied*

---

[7] We also reject Osmon's contention that the district court committed reversible error by allowing Officer Robinson to testify about how she was impacted by Osmon's allegations. *See Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.").

10

*Towing Corp.*, 966 F.2d 820, 824 (4th Cir. 1992) ("Because this determination by the district court was based upon assessments of witness credibility, it is deserving of the highest degree of appellate deference.").  And on our assessment of the trial record, those factual determinations were not clearly erroneous.[8]

IV.

Pursuant to the foregoing, we are satisfied to reject Osmon's appellate contentions. We therefore affirm the judgment of the district court.

*AFFIRMED*

---

[8] Finally, we reject Osmon's claim that Atchison's testimony should have been stricken because she was a "surprise witness."  *See* Br. of Appellant 27.  The district court reasonably considered the parties' arguments, including the fact that Atchison was identified in multiple of the government's disclosures, and properly exercised its discretion to allow Atchison to testify.  And, in any event, Osmon conceded in her post-bench trial briefing that "Atchison adds nothing of value to this case."  *See* J.A. 383 (citation modified).